STEPTOE, JUDGE:
This is an action filed by Michele K. Rivera against the Board of Trustees of the University System of West Virginia, and hereinafter known as “the Board,” to recover for the breach of an alleged employment contract for the period from July 1,1987, until June 30,1988.
The claimant, hereinafter known as “Dr. Rivera,” is a licensed physician initially employed by the Board in 1981, under a probationary contract, as an Assistant Professor in the Department of Pathology in the medical school of Marshall University, at Huntington, West Virginia, for the period from July 1,1981 until June 20,1982. She performed her assigned duties for that period and received her stipulated compensation.
Dr. Rivera received substantially similar probationary contracts for the five succeeding academic years; her compensation for the sixth year was $41,544.00.
It is the position of Dr. Rivera that she was entitled by law to a one year terminal contract for the period July 1, 1987 until June 30, 1988, for a compensation of not less than $41,544.00, notwithstanding that she had received from the University no contract in writing.
The Board filed a general denial, but at the hearing offered evidence to support two defenses, to-wit:
a) no written contract — no pay; and
b) Dr. Rivera had resigned her position, in February 1986, effective June 30,1987.
The first defense is not substantiated by the Board’s own rules, its “Revised Policy Bulletin No. 36,” dated December 14,1984, and hereinafter referred to as “the Rules of the Board,” restating the Board’s policy with respect to academic freedom, faculty appointments, and appeal procedures, and providing in its resolution clause, in pertinent part, that “All academic appointments made after the effective date hereof shall be made in conformity with this policy statement.”
*115 Section 8 of the Rules of the Board reads as follows:
8. Probationary Status:
a. When a full-time faculty member is appointed on other than a temporary or tenured basis in any of the institutions of higher education under the jurisdiction of the Board of Regents, the appointment shall be probationary.
b. During the probationary period, the terms and conditions of every reappointment shall be stated in writing, with a copy of the agreement furnished the individual concerned within 15 days following receipt of the Board of Regents’ budgetary allocations and guidelines.
c. The maximum period of probation shall not exceed seven years. Before completing the sixth year of a probationary appointment, any nontenure faculty member shall be given written notice of tenure, or offered a one-year written terminal contract of employment. During the probationary period, faculty members may be granted tenured appointment before the sixth year of service, such appointment to be based upon criteria established by the institution and copies provided to the Board of Regents.
d. During the probationary period, contracts shall be issued on a year-to-year basis, and appointments may be terminated at the end of the contract year. During said probationary period, notice of nonreappointment may be issued for any reason that is not arbitrary, capricious, or without factual basis. Any documented information relating to the decision for nonretention or dismissal shall be provided promptly to the faculty member upon request.
e. After the decision regarding retention has been made by a President, he or she shall notify the probationer of the decision as soon as practicable. In cases of nonretention of faculty who began service at the start of the fall term, formal notification shall be given.
(1) No later than March 1 of the first academic year of service;
(2) No later than December 15 of the second academic year of service;
(3) At least one year before the expiration of an appointment after two or more years of service in the institution.
(The remainder of subsection e. and subsections f. and g. are not pertinent.)
Subsection c. of Section 8, it will be observed, provides that a probationary faculty *116 member may not serve in such status more than seven years, and that as to any non-tenured faculty member, he or she must be offered a one-year written terminal contract of employment. It is also provided in Subsection e. (3) that a probationary faculty member with tow or more years of service in the institution must be notified of nonretention at least one year before the expiration of an appointment.
From the evidence it has been shown that Dr. Rivera received an appointment, or contract of employment for the academic year commencing July 1, 1986, until June 30, 1987, performed her duties and received her stipulated compensation. The Board failed or refused to give her, on or before June 30,1986, a notice of nonretention for the academic year commencing on July 1,1987, to notify her of tenure, or to giver her a one-year written terminal contract of employment as provided and mandated by the Rules of the Board and to which she was entitled. The Court holds that a termination contract should have been offered, and that such a mandated contract, even though not issued, may be the basis of a contract of employment on which a cause of action may be issued.
There remains the Board’s contention that Dr. Rivera had, in February of 1986, voluntarily submitted her resignation as an Associate Professor, effective June 30,1987, when she signed her annual Faculty Evaluation Report dated February 1986. Said Evaluation Report appears in the hearing record as Claimant’s Exhibit No. 8 to the pretrial deposition of Dr. Stebbins B. Chandor, which deposition was admitted to the evidence adduced at the hearing before this Court as Court’s Exhibit No. 1. The Evaluation Report was signed by Dr. Rivera and by Dr. Chandor, then the Chairman of the Pathology Department of the School of Medicine of Marshall University. Dr. Chandler was the immediate superior of Dr. Rivera and had the duty to report on her performance as an Assistant Professor of Pathology. His opinion of her performance was, apparently for the first time, professionally critical. Dr. Rivera defended her own performance, at some length and in some detail; and both of them signed the report. The last sentence of the report, evidently written by Dr. Chandor, reads as follows:
‘This next years contract (1986-87) is considered a terminal appointment..”
Dr. Rivera contends not only that the word “resign” or the word “resignation” did not appear in the document, but that she did not intend to resign, and signed the Report only because it was expected that she should sign her annual Evaluation Report, each year. She further contends that, as Dr. Chandor admitted in his deposition, that the Evaluation Report was not a contract. It was shown by documentary evidence that Dr. Chandor had authority only to make recommendations in the Report, and had absolutely no authority to terminate or extend a contract, which authority was vested in the President of the University.
It clearly appears from the evidence, moreover, that notwithstanding Dr. Chandor’s recommendation, Dr. Rivera was given a probationary contract for her sixth year of service, and not a terminal contract, and rendered service for the entire academic year of 1986-1987.
The University, on May 15,1987, caused a letter to be written to Dr. Rivera, signed *117 by Harry E. Neel, Jr., its Executive Vice President, in behalf of Dale F. Nitzschke, the President, giving her notice that she would not be reappointed after the 1987-88 academic year. By a subsequent letter, dated June 29,1987, and over the same signature, the University said that on May 15th it had not been fully informed, and that would not be employment for Dr. Rivera in 1987-88, because she had agreed to end her employment on June 30,1987. In any event, if the letter of June,-1987, it came exactly 364 days too late to have any significance or effect under the Rules of the Board.
Furthermore, the Rules of Board, Section 6, require that a faculty member desiring to resign give a notice in writing. Dr. Rivera gave no such notice, was not requested to give such notice, and expected to be employed for another year.
The Rules of the Board are too plain to require construction, and the evidence of the Board on the question of resignation falls far short of a preponderance of the evidence, and is not persuasive.
The Court finds that the Board failed to comply with its guidelines for reemployment of probationary faculty members, in this case to the prejudice of Dr. Rivera, and that she was entitled to a one-year written terminal contract of employment for her academic year 1987-1988, at a salary of $41,544.00, which contract she was ready, willing and able to perform, for her part.
The Court also finds, on the basis of all of the evidence, that the Board failed to prove that Dr. Rivera resigned her position as an Assistant Professor.
Accordingly, the Court makes an award to Michele K. Rivera of $41,554.00.
Award of $41,554.00.